IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GARTH ANCIER,  )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>MICHAEL F. EGAN, III, JEFFREY M. )<br>HERMAN and MARK F. )<br>GALLAGHER, )<br>)<br>Defendants. )<br>_____ ) | CIVIL NO. 14-00294 JMS-RLP<br><br>AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JEFFREY M. HERMAN'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S COMPLAINT FILED JUNE 27, 2014, DOC. NO. 44 |

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JEFFREY M. HERMAN'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S COMPLAINT FILED JUNE 27, 2014, DOC. NO. 44**

**I. INTRODUCTION**

On June 27, 2014, Plaintiff Garth Ancier ("Ancier" or "Plaintiff") filed this action alleging state law claims for malicious prosecution and abuse of process against Michael F. Egan, III ("Egan") and his former attorneys Jeffrey M. Herman ("Herman"), and Mark F. Gallagher ("Gallagher") (collectively, "Defendants"). The basis of Ancier's claims is that Defendants filed a frivolous federal action against him in this district, *Egan v. Ancier*, Civ. No. 14-00188 SOM-BMK (the "underlying action"), which falsely accused Ancier of sexually

assaulting Egan in Hawaii in 1999. The underlying action was voluntarily dismissed without prejudice after Ancier sought Rule 11 sanctions against Defendants for filing a baseless action.

Currently before the court is Herman's Motion for Judgment on the Pleadings, which Egan and Gallagher join, arguing that Ancier cannot establish essential elements of each of his claims. *See* Doc. Nos. 44, 50, 60. In particular, Defendants argue that Ancier's malicious prosecution claim fails because Ancier cannot show that the underlying action was terminated in his favor where it was dismissed without prejudice, and that the abuse of process claim fails because Ancier has not alleged a "willful act" separate from the use of process itself. Based on the following, the court DENIES the Motion as to Ancier's malicious prosecution claim, and GRANTS the Motion as to Ancier's abuse of process claim, with leave to amend by December 19, 2014.

## II. BACKGROUND

A.  **Factual Background**

Based on the allegations in the Complaint and the documents of which the court takes judicial notice,[1] the court sets forth the following facts:

---

[1] The court takes judicial notice of the filings in the underlying action. *See Reyn's Pasta Bella v. Visa USA*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (explaining that the court "may take
(continued...)

On April 21, 2014, Egan (through his attorneys Herman and Gallagher) filed the underlying action alleging that Ancier sexually assaulted Egan during two trips Egan made to Hawaii with Marc Collins-Rector and Chad Shackley between August 1 and October 31, 1999. Doc. No. 1, Compl. ¶ 7. According to the complaint in the underlying action, during this time period Egan was a teenage actor and on the payroll of a digital entertainment company of which Collins-Rector and Shackley were principals and Ancier was an investor. *Id.* ¶ 8. The underlying complaint alleged that Ancier sexually assaulted Egan at the Paul Mitchell estate in Kailua, Hawaii, and that Egan flew to Hawaii for the second trip with Ancier on a private jet. *Id.* ¶ 12. Although not part of Egan's claims (presumably due to the applicable California statute of limitations), the complaint in the underlying action further alleged that Egan was sexually assaulted by Ancier, Collins-Rector, and Shackley during this same time period in California. *Id.* ¶ 10; *see also* Doc. No. 44-3, Defs.' Ex. A.

Ancier asserts that these allegations of sexual assault are completely false because (1) "Ancier had never flown on a private jet to Hawaii, had never

---

[1](...continued)
judicial notice of filings and other matters of public record"). The court does not consider evidence submitted by Plaintiff that is not subject to judicial notice, including excerpts of deposition transcripts, a transcript of a press conference, and an un-filed Motion for Rule 11 sanctions in the underlying action. *See* Doc. Nos. 69-2 - 69-5, Pl.'s Exs. A-D.

3

visited the Paul Mitchell estate, and was not in Hawaii during the time of the two alleged trips," Doc. No. 1, Compl. ¶ 12; (2) "during that time, Mr. Ancier . . . as President and programming chief of NBC Entertainment[,] . . . [was present] at nearly daily meetings in Los Angeles and sometimes New York," *id.* ¶ 13; and (3) Egan "had previously participated in law enforcement investigations concerning alleged sexual abuse by Mr. Collins-Rector and civil litigation [involving] similar allegations, without mentioning Mr. Ancier or any events in Hawaii." *Id.* ¶ 15. As a result, "[e]ven a cursory investigation would have shown that the allegations in [the underlying action] were not worthy of credence and that the [underlying action] was an ill-advised . . . ." *Id.* ¶ 14.

On April 25, 2014, Ancier informed Defendants of his intention to file a motion for Rule 11 sanctions if Defendants did not withdraw the underlying complaint. *Id.* ¶ 15. In response, Egan's counsel asked Ancier for proof that he was not in Hawaii during the relevant time period. *Id.* ¶ 16.

On May 29, 2014, Ancier filed a Motion to Dismiss for lack of personal jurisdiction and improper venue, Doc. No. 44-4, Defs.' Ex. B, which was set for hearing for July 28, 2014. In the meantime, on June 5, 2014, Ancier served Defendants with an unfiled motion for Rule 11 sanctions. Doc. No. 1, Compl. ¶ 17. In response, on June 25, 2014, Defendants voluntarily dismissed the

underlying action without prejudice. *Id.*

Ancier asserts that the underlying action, based on "clearly meritless" "allegations of sexual assault by Mr. Ancier in Hawaii," was "part of Defendants' campaign to threaten entertainment industry executives with sexual assault charges." *Id*. ¶¶ 14, 19. The Complaint alleges that Defendants filed and/or continued to prosecute the underlying action "maliciously," knowing that (1) they "lacked probable cause as to any claim alleged against Mr. Ancier," and (2) the "claims asserted against Mr. Ancier were legally untenable." *Id.* ¶¶ 24, 26. Further, in conjunction with the filing of both the underlying action and other related actions,[2] Defendants Herman and Gallagher conducted a "high profile press conference . . . in which they vowed to wage war on numerous unnamed members of the alleged Hollywood elite." *Id.* ¶ 18. As a result, the Complaint asserts that by filing the underlying action and holding the press conference under these circumstances, Defendants' use of process was "not proper in the regular conduct of a sexual assault case." *Id.* ¶ 28. Ancier seeks damages for injury to his reputation and business standing, severe mental and emotional distress, and

---

[2] Egan filed three additional, separate actions in this district against other entertainment industry figures, based on similar allegations that they sexually assaulted Egan during two trips to Hawaii between August 1, and October 31, 1999. Doc. No. 1, Compl. ¶ 10; *see also Egan v. Singer*, Civ. No. 14-177 SOM-BMK; *Egan v. Goddard*, Civ. No. 14-189 SOM-BMK; *Egan v. Neuman*, Civ. No. 14-190 SOM-BMK. Like the underlying action, each of these actions was voluntarily dismissed.

attorneys' fees and costs. *Id.*

**B.      Procedural Background**

Ancier filed his Complaint for Damages on June 27, 2014. Doc. No. 1. Herman filed his Motion for Judgment on the Pleadings on October 14, 2014, Doc. No. 44, which Gallagher and Egan substantively joined on October 17 and 21, 2014, respectively. Doc Nos. 50, 60. Ancier filed an Opposition on November 10, 2014, Doc. No. 69, and filed an Errata to the Opposition deleting an argument and including several additional sentences.[3] Doc. No. 71. Herman filed a Reply on November 18, 2014. Doc. No. 79. A hearing was held on December 2, 2014.

### III.  STANDARD OF REVIEW

A party may make a motion for judgment on the pleadings at any time after the pleadings are closed, but within such time as to not delay the trial. Fed. R. Civ. P. 12(c). Rule 12(c) motions are virtually identical to Rule 12(b)(6) motions, and the same standard applies to both motions. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and

---

[3] Herman argues that any additional arguments contained in the Errata are untimely and therefore should not be considered by the court. *See* Doc. No. 79, Herman Reply at 6 n.2. Because the new argument in the Errata (consisting of only a few sentences) is directed to Ancier's malicious prosecution claim, the court need not consider it in denying Herman's Motion as to that claim.

Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review).

Thus, to survive such motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken

7

as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## IV. <u>ANALYSIS</u>

Defendants argue that Plaintiff has failed to establish necessary elements for each of his claims. The court addresses each claim in turn.

### A. **Malicious Prosecution**

Defendants argue that Plaintiff's malicious prosecution claim fails because Plaintiff cannot establish a necessary element of this claim -- that the underlying action was terminated in his favor. Based on the following, the court finds that whether the underlying action was terminated in Ancier's favor is a question for the jury, not the court.

Under Hawaii law, a malicious prosecution claim includes three elements: "(1) that the prior proceedings were terminated in the plaintiff's favor; (2) that the prior proceedings were initiated without probable cause; and (3) that the prior proceedings were initiated with malice." *Arquette v. Hawaii*, 128 Haw. 423, 433, 290 P.3d 493, 504 (2012) (quoting *Myers v. Cohen*, 67 Haw. 389, 688

8

P.2d 1145, 1148 (1984)) (emphasis omitted).

The first element requires proof that the prior action "ended in Plaintiff's favor and 'in such a manner that it cannot be revived.'" *Black v. Correa*, 2009 WL 1789294, at *16 (D. Haw. Jun. 22, 2009) (quoting *Wong v. Panis*, 7 Haw. App. 414, 772 P.2d 695, 699 (1989), *rev'd on other grounds by Young v. Allstate Ins. Co.*, 119 Haw. 403, 198 P.3d 666 (2008)). This requirement may be satisfied by "an adjudication in the plaintiff's favor on the merits, . . . a voluntary dismissal with prejudice," *id.*, or when the "termination reflects on the merits." *Jaress & Leong v. Burt*, 150 F. Supp. 2d 1058, 1062 (D. Haw. 2001). And, "[a] voluntary dismissal of a prior action without prejudice may be a favorable termination, depending on the circumstances." *Wong*, 7 Haw. App. at 419, 772 P.2d at 699 (relying on Restatement (Second) of Torts ("Restatement") § 674, comment j (1977)) (other citation omitted); *see also Jaress & Leong*, 150 F. Supp. 2d at 1062.

Although the Hawaii courts have not addressed *when* a voluntary dismissal without prejudice qualifies as "ending in Plaintiff's favor and 'in such a manner that it cannot be revived,'" other courts have determined that a "voluntary dismissal satisfies the favorable termination element of a malicious prosecution claim if the circumstances indicate that the suit was dismissed because the

9

underlying claims were without merit." *See Waste Mgmt. of La., L.L.C. v. Parish of Jefferson ex rel. Jefferson Parish Council*, 947 F. Supp. 2d 648, 659 (E.D. La. 2013) (collecting cases); *see also, e.g.*, *Pasternak v. Trans Union*, 2008 WL 928840, at *6 (N.D. Cal. Apr. 3, 2008) (determining that voluntary dismissal of collections lawsuit supported malicious prosecution claim where plaintiff alleged that the defendant lacked probable cause for filing the action and dismissed the action after the plaintiff threatened to file a cross-claim); *Nelson v. Miller*, 607 P.2d 438, 446 (Kan. 1980) (reasoning that a malicious prosecution claim could stand where "the party commences an action maliciously, and without probable cause, and then, for the purpose of harassing the defendant [engages in costly discovery]" and then dismisses the action); *MacDonald v. Joslyn*, 79 Cal. Rptr. 707, 713 (Cal. App. 1969) (determining that voluntary dismissal of action challenging will was favorable termination where there was no evidence suggesting the defendant had reason to contest the will and three firms moved to withdraw after the defendant failed to provide information supporting the claim).

*Abbott v. United Venture Capital, Inc.*, 718 F. Supp. 828 (D. Nev. 1989), explains that where the prior action was voluntarily dismissed,

> a court generally will have to look beyond the mere pleadings in a malicious prosecution claim. This need for extrinsic evidence arises from the test's focus on the factual circumstances underlying a voluntary dismissal.

10

> Furthermore, where these circumstances are ambiguous, or are the subject of dispute, the jury or other factfinder must determine whether these circumstances satisfy the favorable termination element. Hence, in a malicious prosecution case that is premised on a voluntary dismissal of a prior proceeding, the need may often arise to essentially "try a case within the case." [*Frey v. Stoneman*, 722 P.2d 274, 279 (Ariz. 1986)].

*Id.* at 833-34 (some citations omitted).

Based on the allegations contained in the Complaint and the judicially-noticed facts, the court finds that the Complaint plausibly alleges that Defendants dismissed the underlying action because they did not have a basis to bring it in the first place. The Complaint alleges that Defendants lacked probable cause in filing and maintaining the underlying action where Ancier had not been to Hawaii during the relevant time frame; Egan admitted that he had not been to Hawaii during the relevant time frame; and Egan had never previously alleged any sexual abuse by Ancier despite bringing civil actions against other parties. *See* Doc. No. 1, Compl. ¶¶ 12-15. The Complaint further alleges that Ancier's Rule 11 Motion spurred Defendants to dismiss the allegedly baseless underlying action. *Id.* ¶ 17. Under such circumstances, the Complaint plausibly alleges that Defendants dismissed the underlying action because they believed the lawsuit had

no basis and would not succeed.[4] Such dismissal could be considered in Ancier's favor and provides a basis for the malicious prosecution claim.

The court therefore DENIES Defendants' Motion for Judgment on the Pleadings as to Ancier's malicious prosecution claim.

B.   **Abuse of Process**

Defendants argue that Ancier's abuse of process claim fails because he has not alleged a necessary element of this claim -- that Defendants took a "wilful act" distinct from the use of process itself.[5] Based on the following, the court agrees.

"[T]here are two essential elements in a claim for abuse of process: '(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding.'" *Young v. Allstate Ins. Co.*, 119

---

[4] In his Reply, Herman argues that Egan has asserted to this court in a letter that he intends to re-file an action against Ancier. *See* Doc. No. 79. Such fact is not the proper subject of judicial notice -- the court may take judicial notice of its records, but not the truth of assertions made in them. Indeed, Egan's assertions that he intends to file another action is neither "generally known within the trial court's territorial jurisdiction," nor "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). And in any event, whether Egan intends to and/or does file another action are simply facts that a jury can weigh in determining whether the underlying action was terminated in Ancier's favor.

[5] At the December 2, 2014 hearing, counsel for Gallagher raised the additional argument this claim fails as to Gallagher because there are no allegations establishing that he participated in the press conference. Although the court does not address arguments that have not been properly briefed, any amendment of this claim should provide a basis of liability as to each Defendant.

Haw. 403, 412, 198 P.3d 666, 675 (2008) (quoting *Chung v. McCabe Hamilton & Renny Co.*, 109 Haw. 520, 529, 128 P.3d 833, 842 (2006)). *Young* describes this second element as follows:

> "*[s]ome definite act or threat* not authorized by the process, or aimed at an objective not legitimate in the use of the process, *is required*; and *there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions*."

119 Haw. at 414, 198 P.3d at 677 (quoting Prosser & Keeton on Torts § 121, at 898 (5th ed., W. Page Keeton et al. eds., 1984) ("Prosser and Keeton") (brackets and emphasis in original). Based on this language, *Young* concluded that "more is required than the issuance of the process itself," and the "wilful act" must be "distinct from the use of process *per se*." *Id.* at 415-16, 98 P.3d at 678-79.

*Young* reasoned that requiring the wilful act to be distinct from the use of process sets an abuse of process claim apart from a malicious prosecution claim:

> The tort of malicious prosecution, however, differs from the tort of abuse of process, because it requires that the prior proceedings must have terminated in the plaintiff's favor. *See Wong*, 111 Haw. at 478, 143 P.3d at 17. Yet, if the willful act requirement of the tort of abuse of process could be satisfied by showing that there was a lack of justification in the use of process, parties could avoid their obligation of establishing the dispositional

13

> element in a malicious prosecution claim by simply alleging a claim for abuse of process. This dispositional requirement furthers the interests of finality and judicial economy. As this court explained in [*Wilcox v. Berrey*, 16 Haw. 37 (1904)], "To allow a defendant who has lost his case to sue the plaintiff for damages on the ground that the plaintiff's claim was false and malicious would give him his day in court a second time with no good result to our system of administering justice in courts of law." 16 Haw. at 43.

*Id.* at 415, 198 P.3d at 678; *see also Coleman v. Gulf Ins. Grp.*, 718 P.2d 77, 89 (Cal. 1986) ("In construing the requirement of a wilful act, the courts have endeavored to curb and remedy serious abuses of the judicial process while avoiding undue restraints on the ability of litigants to vigorously assert their interests. The requirement that plaintiffs prove something more than an improper motive and the absence of meritorious grounds ensures against an uncontrolled expansion of liability.").

*Young* applied these principles to reject that the defendant's unreasonably low settlement offers could constitute the requisite "wilful act" for an abuse of process claim. *Young* reasoned that settlement offers "are 'proper,' if not encouraged in the regular conduct of proceedings [and a] contrary rule would have a 'devastating effect on the settlement process,' because parties would be wary of making settlement offers if such offers could provide the 'essential

ingredient' to subject them to a second lawsuit for abuse of process." 119 Haw. at 414, 198 P.3d at 677. *Young* further rejected that the plaintiff established any "wilful act" by asserting that the defendants "sought to further an improper purpose when they employed the legal processes of filing an answer, appealing the arbitration award and taking the dispute to trial, making a HRCP Rule 68 offer of judgment, and opposing [the plaintiff's] requests for attorneys' fees, costs, and prejudgment interest." *Id.* at 416, 198 P.3d at 679. These acts, "without more, did not constitute 'wilful' acts that were, in themselves, antithetical to the legitimate conduct of the underlying case." *Id.*

*Young* does not address what *would* constitute a wilful act sufficient to support an abuse of process claim, and the court could find no other Hawaii cases addressing the circumstances under which a plaintiff has sufficiently alleged a wilful act. Prosser and Keeton, upon which *Young* relied, however, describes that

> [t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

15

Prosser and Keeton, at 898.

Turning to the allegations in this action, beyond the filing of the underlying action itself, the only other act alleged in the Complaint is that Defendants "wage[d a] public campaign of threatening sexual assault allegations against entertainment executives," "for the improper purpose of trolling for additional plaintiffs." Doc. No. 1, Compl. ¶ 28. In particular, the Complaint asserts that Defendants

> launch[ed] a media campaign -- including a high profile press conference at which Messrs. Egan and Herman both spoke -- in which they vowed to wage war on numerous unnamed members of the alleged Hollywood elite. This use of Mr. Ancier as a pawn in a threatened widespread campaign against entertainment industry executives was clear malicious conduct and harassment.

*Id.* ¶ 18. Thus, the Complaint alleges that distinct from the filing of the complaint in the underlying action, Defendants "harassed" Ancier by widely publicizing their allegations that Ancier sexually assaulted Egan when he was a teenager.

Based on the principles outlined above, the court finds that these allegations fail to plausibly allege that this "media campaign" is wilful in and of itself, or "antithetical to the legitimate conduct of the underlying case." *See Young*, 119 Haw. at 416, 198 P.3d at 679. Indeed, the Complaint fails to describe the content of this media campaign, much less how such public comments

compare to what was alleged in the underlying action's complaint (which itself was publicly filed), or how Defendants used this media campaign as a form of coercion against Ancier. And although the court could find no Hawaii cases addressing whether publicity may be the requisite "wilful act" for an abuse of process claim, other courts persuasively find that publicity, standing alone and without an element of coercion, is not a wilful act given that civil actions are themselves public.[6] The court therefore finds that the Complaint's conclusory assertions that Defendants held a press conference and/or engaged in a "media campaign" regarding the content of their complaint in the underlying action fail to establish a wilful act "distinct from the use of process per se." *Young*, 119 Haw. at

---

[6] *El Greco Leather Products Co. v. Shoe World, Inc.*, 623 F. Supp. 1038, 1045-46 (E.D.N.Y. 1985) ("Embarrassment in business resulting to the parties being sued is not beyond the area of legitimate use of process . . . ." (citations omitted)); *Meidinger v. Koniag, Inc.*, 31 P.3d 77, 86 (Alaska 2001) ("[T]he publicity Koniag accorded the lawsuit was a permissible exercise, if not an obligation, of a corporation about to spend money on litigation expense."); *Grossman v. Perry*, 1999 WL 1318984, at *1 (Mass. Super. Apr. 15, 1999) ("I find that a plaintiff does not commit an abuse of process by publicizing the allegations in the complaint or by providing the complaint to a newspaper."); *Beacon Journal Publ'g Co. v. Zonak, Poulos & Cain*, 1979 WL 209335, at *3 (Ohio Ct. App. Sept. 25, 1979) ("Assuming that such press conferences were held by defendants, and copies of the complaint in the federal court action were distributed at such press conferences, this would not constitute an abuse of process, even though some other actionable tort might be committed by such action."); *Reiner v. Kane*, 25 Misc. 2d 477, 480 (N.Y. Sup. Ct. 1960) ("Embarrassment in business resulting to the parties being sued is not beyond the area of legitimate use of process."); *Cf. Cardy v. Maxwell*, 9 Misc.2d 329, 330-32 (N.Y. Sup. Ct. 1957) (upholding claim for abuse of process that included allegations that "defendants inserted in the complaint . . . allegations regarding plaintiff which, if published, would expose him to public ridicule and contempt," that "defendants . . . threatened plaintiff with adverse newspaper publicity unless he paid several million dollars to them to withhold further action by them," and that "defendants caused the . . . allegations of the complaint to be given extensive and lurid publicity when plaintiff refused to comply with their demands").

416, 198 P.3d at 679.

In opposition, Ancier argues that the press conference "went far beyond a discussion of the lawsuit against Plaintiff," because Herman "solicited new clients while also threatening to wage war on other entertainment industry executives and publicly smearing Plaintiff with horrible and despicable accusations." Doc. No. 71-1, Pl.'s Opp'n at 11, 12. As an initial matter, the allegations in the Complaint fail to provide any specifics regarding this press conference -- the court has only conclusory assertions regarding this alleged "media campaign."[7] Further, Ancier fails to explain what information was stated in the press conference that was not already included in Defendants' complaint in the underlying action, especially since the complaint itself included "horrible and despicable accusations." Finally, whether Defendants held this press conference for the purpose of seeking additional clients and/or threatening suit against other entertainment executives addresses the first element of the abuse of process claim, *i.e.*, whether Defendants had an ulterior purpose, not the second element of this claim, *i.e.*, a wilful act in the use of the process which is not proper in the regular conduct of the proceeding. Rather, standing alone, the court rejects that an

---

[7] Although Ancier submits a transcript of the press conference, Doc. No. 69-2, Pl.'s Ex. A, it is not subject to judicial notice and the court will not consider it on the Motion for Judgment on the Pleadings.

attorney holding a press conference to publicize allegations of child sexual abuse made in a public complaint is a wilful act that is not proper in the regular conduct of the proceedings.

In further opposition, Ancier argues that whether Defendants had "ulterior motives" and/or committed "wilful acts" are factual inquiries that must necessarily be determined by a jury.[8] *Id.* at 13. As *Young* amply demonstrates, an abuse of process claim may be disposed of on a motion to dismiss, and Ancier's protestations of "factual issues" does not obviate his duty to plausibly allege the basis for an abuse of process claim.

The court therefore GRANTS Defendants' Motion as to Ancier's abuse of process claim.

## V. CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part Defendant Jeffrey M. Herman's Motion for Judgment on the Pleadings as to Plaintiff's Complaint. Plaintiff's malicious prosecution claim remains. If Plaintiff

---

[8] Ancier also asserts that he "expects that discovery will lead to additional instances of how Egan and Herman acted outside of process." Doc. No. 71-1, Pl.'s Opp'n at 11. The court can only determine the basis of Plaintiff's claim based on what is alleged in the Complaint, and "[t]he Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it." *Mujica v. AirScan Inc.*, --- F.3d ----, 2014 WL 5839817, at *9 (9th Cir. Nov. 12, 2014) (emphasis omitted) (citing *Iqbal*, 556 U.S. at 678-79 (explaining that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions")).

chooses, he may file an Amended Complaint attempting to reallege, if possible, the abuse of process claim by December 19, 2014. An Amended Complaint will supersede the Complaint and must be complete in itself without reference to prior superseded pleadings (*i.e.*, it must also include the malicious prosecution claim). *E.g.*, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc). If Plaintiff chooses not to file an Amended Complaint by December 19, 2014, this action will proceed as to Plaintiff's malicious prosecution claim only.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 4, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Ancier v. Egan, et al.*, Civ. No. 14-00294 JMS-RLP, Amended Order Granting in Part and Denying in Part Defendant Jeffrey M. Herman's Motion for Judgment on the Pleadings as to Plaintiff's Complaint Filed June 27, 2014, Doc. No. 44