IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GARTH ANCIER, | CIVIL NO. 14-00294 JMS-RLP |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO PUBLICLY FILE DOCUMENTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 264 |
| vs. | |
| MICHAEL F. EGAN, III; JEFFREY M. HERMAN; and MARK F. GALLAGHER, | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO PUBLICLY FILE DOCUMENTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 264**

**I. INTRODUCTION**

On October 2, 2015, Plaintiff Garth Ancier ("Plaintiff") filed the instant Motion to file publicly Exhibits 4, 19-20, 23-25, Unredacted Exhibit 6, and Unredacted Portions of his Concise Statement of Facts and Memorandum in Support of his Motion for Summary Judgment, Doc. No. 245 ("Motion"). Doc. No. 264. Defendants Jeffrey M. Herman ("Herman") and Michael F. Egan, III ("Egan") (collectively, "Defendants") filed Objections on October 13, 2015. Doc. Nos. 274, 275. Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing. As set forth below, Defendant's Motion is

GRANTED in part and DENIED in part.

## II. BACKGROUND

In this action, Plaintiff asserts state law claims for malicious prosecution and abuse of process against Egan and his former counsel, Herman and Mark F. Gallagher. Doc. No. 88, First Am. Compl. ("FAC"). Plaintiff alleges that Defendants filed a frivolous action against him in *Egan v. Ancier*, Civ. No. 14-00188 SOM-BMK (the "underlying action"), which falsely accused Plaintiff of sexually assaulting Egan in Hawaii in 1999. The underlying action was voluntarily dismissed without prejudice after Plaintiff sought Rule 11 sanctions against Defendants. Plaintiff further alleges that in addition to lacking merit, the underlying action "was brought to smear, harass and severely injure Mr. Ancier as part of an avowed and very public campaign by Mr. Egan and Mr. Egan's counsel to . . . shake down other entertainment industry executives with threats of sexual assault charges." Doc. No. 88, FAC at 2.

A Protective Order was filed on February 18, 2015. Doc. No. 128. By the instant Motion, Plaintiff seeks to publicly file documents in connection with his Motion for Summary Judgment that contain information either designated confidential or derived from documents that have been designated confidential pursuant to the Protective Order, and/or that contain information that may be

protected by the attorney-client privilege.  These documents include:

(1) Exhibit 4 - Excerpts from Herman's deposition (1) naming other alleged perpetrators of sexual abuse, and (2) with respect to other claimants, stating that Herman received monies as a result of pursuing similar sexual abuse claims;[1]

(2) Exhibit 19 - Email correspondence between Herman and a lawyer in Herman's law firm naming potential Egan defendants and discussing litigation strategy;

(3) Exhibit 20 - A July 17, 2014 letter to Herman from John Manly, newly-retained counsel for Egan, that discusses Egan's position regarding the breakdown of Herman's representation and the monetary amount of settlements obtained by Herman in other cases;

(4) Exhibit 23 - Email correspondence between Egan's mother and a lawyer in Herman's law firm discussing a separate criminal action and making an observation that the criminal action accelerated after certain action was taken in connection with the underlying action;

---

[1] Herman's affirmation that he received monies, but without stating from whom, is found in Exhibit 4 on page 66 of his deposition transcript.  The court determined that these monies were received on behalf of other claimants by reviewing pages 64-65 of Herman's unsealed deposition transcript.  *See* Doc. No. 246-7, Pl.'s Ex. 3.

(5) Exhibit 24 - Email correspondence from a consultant or contractor retained by Herman to Herman, transmitting files;

(6) Exhibit 25 - Email correspondence from a lawyer in Herman's law firm confirming a conversation between Egan and Herman regarding litigation of the underlying action;

(7) Exhibit 6 - unredacted Egan deposition testimony which includes multiple questions concerning allegations in the Complaint in the underlying action, quotes from a Certificate of Merit that is sealed, *see* Doc. No. 116, pursuant to a court order dated February 3, 2015, *see* Doc. No. 114, and Egan's refusal to answer such questions; and

(8) Excerpts from Plaintiff's Concise Statement of Facts ("CSF") and Memo in Support ("MIS") of Plaintiff's Motion for Summary Judgment that summarize and/or refer to information contained in the exhibits at issue.

In addition, pursuant to paragraph 18 of the Protective Order, Plaintiff seeks a court order "declassifying" the above documents and/or information as not confidential.

///

///

## III. STANDARD OF REVIEW

Pursuant to Local Rule 83.12(b), a party "wish[ing] to file . . . [any] matter that has been designated as confidential by another party pursuant to a protective order, or . . . to refer in a memorandum or other filing to information so designated by another party" must file a motion to file such matter publicly. "[A]ny party may file . . . written objections seeking to have all or part of the matter sealed." *Id.* However, based on the "general right to inspect and copy public records and documents, including judicial records and documents," there is a "strong presumption" in favor of maintaining public access to judicial records that are not of a type "traditionally kept secret for important policy reasons."[2] *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). This strong presumption "applies fully to . . . motions for summary judgment and related attachments." *Id.* at 1179.

A party seeking to seal attachments to a dispositive motion "bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Id.* at 1178. In so doing, the party "must 'articulate compelling reasons supported by specific factual findings' that outweigh . . .

---

[2] Records that are traditionally kept secret include "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

5

public policies favoring disclosure." *Id.* at 1178-79 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The "compelling reasons" standard applies "even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Id.* at 1179-80 ("A 'good cause' showing" is sufficient to obtain "a protective order to seal documents during discovery," but "will not, without more, satisfy a 'compelling reasons' test.")

Generally, compelling reasons that are sufficient to overcome this strong presumption exist when court filings contain privileged attorney-client communications. *Creative Tent Int'l Inc. v. Kramer*, 2015 WL 4638320, at *3 (D. Ariz. Aug. 4, 2015) ("[T]he presence of privileged attorney-client communications is a compelling reason to seal the subject judicial record."); *Guidiville Rancheria of Cal. v. United States*, 2013 WL 6571945, at *9 (N.D. Cal. Dec. 13, 2013) ([T]he attorney-client privilege . . . establishes compelling reasons for sealing."). Also, compelling reasons may be shown where

> such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.

*Kamakana*, 447 F.3d at 1179 (internal citations and quotation marks omitted).

6

## IV. **DISCUSSION**

It is Defendants' burden to establish compelling reasons to seal each of the documents that Plaintiff seeks to file publicly. Egan contends generally that the documents at issue contain information protected by the attorney-client privilege and/or the protective order, and that he "***has not waived***" his attorney-client privilege. Doc. No. 275, Egan's Opp'n at 2. Herman contends that (1) Exhibits 19 and 23-25 contain information subject to Egan's attorney-client privilege, (2) Egan has not waived his attorney-client privilege, (3) Exhibit 4 contains confidential information that Herman disclosed in reliance on Plaintiff's counsel's assurances that such information would be sealed, and (4) the documents at issue contain "the names of other alleged perpetrators of sexual abuse who are not parties to this dispute and executed agreements with Herman to keep their names confidential." Doc. No. 274, Herman's Obj. at 2-6. After a review of the record and as discussed below, the court finds that Defendants have not met their burden except as to the inclusion of other alleged perpetrators' full names.

### A.     **Attorney-Client Privilege**

#### 1.     *Legal Standard*

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an

attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (internal citations and quotation marks omitted). The party "asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication." *Id.* (internal citations and quotation marks omitted). The Ninth Circuit applies an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)). "The party asserting the privilege bears the burden of proving each essential element." *Id.* (citations omitted).

As to the last element, the attorney-client privilege is waived "when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (en banc); *see also Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010)

(determining that in opposing a summary judgment motion, Hernandez' disclosure of privileged communications constituted a waiver of such privilege); *Wichansky v. Zowine*, 2015 WL 5693521, at *1 (D. Ariz. Sept. 29, 2015) (recognizing that the attorney-client privilege is waived when a third party participated in communications between the client and his counsel, even though the third party was there to provide support). Waiver of the attorney-client privilege based on disclosure of a privileged communication "results in waiver as to all other communications on the same subject." *Hernandez*, 604 F.3d at 1100; *see also Weil*, 647 F.2d at 24 (recognizing that disclosure "constitutes waiver of the privilege as to all other such communications on the same subject").

### 2. *Application*

Defendants' bare assertions that the attorney-client privilege covers some or all of the exhibits at issue here are not sufficient to establish such fact. Moreover, applying the eight-part test, the court finds that the attorney-client privilege does not cover most of the exhibits at issue, and to the extent it could, it has been waived.

More specifically, in Exhibit 4, the names of other alleged perpetrators are disclosed in documents that Egan publicly filed in the instant action. *See* Doc. No. 254-1, Fred. M. Ryan Decl. at 2; *see also* Doc. No. 229-11,

Egan's Ex. J at 2.  And the remaining information in Exhibit 4 refers to facts known by Herman and not confidential information disclosed between Egan and Herman.

Similarly, as to Exhibit 19, Egan disclosed the names of alleged perpetrators as set forth above.  And to the extent litigation strategy is discussed, there is no indication that such information was communicated between Egan and Herman or his law firm.  In any case, the litigation strategy at issue was disclosed in a press conference conducted by Herman and Egan.  *See* Doc. No. 69-2, Ex. A, Tr. of April 21, 2014 press conference at 2 (discussing generally the timing of asserting claims); *see also Bittaker*, 331 F.3d at 719; *Weil*, 647 F.2d at 24 (recognizing that disclosure "constitutes waiver . . . as to all other such communications on the same subject").

To the extent Exhibit 20 includes information Egan communicated to Herman regarding his position in connection with the underlying action, Egan disclosed such information to Mr. Manly to obtain help in Egan's dealings with Herman and his law firm -- a separate legal matter.  By disclosing such information, Egan waived any attorney-client privilege that might have applied.  And to the extent Exhibit 20 discloses the amount of settlement monies Herman received on behalf of other claimants, such information is factual and not a

confidential communication between Egan and Herman and his law firm. Thus, to that extent, Exhibit 20 does not include confidential attorney-client communications between Egan and Herman and his law firm.

Exhibit 23 is a letter written by Egan's mother. To the extent this letter references information that was the subject of confidential attorney-client communications, the disclosure of such information to Egan's mother, either contemporaneously or after the fact, destroyed the confidentiality of such information. *See Bittaker*, 331 F.3d at 719; *see also Wichansky*, 2015 WL 5693521, at *1 (recognizing that the attorney-client privilege is waived when a third party participated in communications between the client and his counsel, even though the third party was there to provide support).

Exhibit 24 is nothing more than a transmittal message and contains no confidential attorney-client communication. Furthermore, Egan disclosed the identity of the consultant and the subject matter of the transmittal (not included in Exhibit 24) in a document he filed in this action. *See* Doc. No. 254-1, Ryan Decl. at 2.

Exhibit 25 contains information communicated between Egan and Herman's law firm regarding litigation of the underlying action that might be covered if such information were confidential. However, Egan discusses the

11

subject matter of such communication in a document he filed publicly in this action. *See* Doc. No. 254, Egan's Reply at 3. Thus, Egan waived the attorney-client privilege as to Exhibit 25.

In Exhibit 6, questions posed to Egan during his deposition quote from a Certificate of Merit prepared by a mental health professional. Neither Egan nor Herman explained why information disclosed to a mental health professional would be covered by the attorney-client privilege.

In short, the attorney-client privilege does not cover any of Plaintiff's exhibits or excerpts from his CSF and MIS that summarize and/or refer to the information in these exhibits. Consequently, the documents at issue are not subject to sealing on this basis.

**B.     Neither the Protective Order Nor Opposing Counsel's Assurances of Confidentiality Constitute Compelling Reasons to Seal Exhibits**

Egan contends that all exhibits must remain sealed because they are covered by the Protective Order. Doc. No. 275, Egan's Opp'n at 2. Herman contends that compelling reasons exist to seal Exhibit 4 -- excerpts of his deposition testimony -- because he relied on Plaintiff's counsel's assurance that such testimony would be sealed. Doc. No. 274, Herman's Opp'n at 4-6. Defendants are mistaken.

To the extend Egan argues that simply because information is covered by the Protective Order it must remain sealed, such argument is without merit. *See Kamakana*, 447 F.3d at 1179 (applying "compelling reasons" standard "even if the dispositive motion, or its attachments, were previously filed under seal or protective order"). Similarly, the mere fact that the Certificate of Merit, portions of which are quoted in Exhibit 6, was filed under seal by a prior court order is not sufficient to establish a compelling reason to seal such information at this time, particularly where the order to seal was based on the less stringent "good cause" standard. *See* Doc. No. 114, Entering Order ("The Court . . . finds good cause to seal the Certificate of Merit."). *See Kamakana*, 447 F.3d at 1179. Moreover, the crux of this action is a dispute about whether Egan filed the underlying action in bad faith. An examination of the underlying facts and circumstances that are also addressed in the Certificate of Merit will be of critical importance in resolving Plaintiff's claims. Defendants do not set forth compelling reasons why portions of Exhibit 6 quoting the Certificate of Merit must be sealed.[3] And Herman's

---

[3] Nor does Hawaii Revised Statutes ("HRS") § 657-1.8(d) provide a compelling reason to seal the Certificate of Merit. "[Section] 657-1.8 "extended the statute of limitations for bringing a cause of action relating to the sexual abuse of a minor." *Roe v. Ram*, 2014 WL 10474393, at *4 (D. Haw. Nov. 26, 2014). In order to avail himself of the extended limitation period to file the underlying action, the statute required that Egan obtain a certificate of merit from a mental health professional that includes "a notarized statement . . . [that] set[s] forth in reasonable detail the facts and opinions relied upon" by such mental health professional in concluding that there is a reasonable basis to believe that some sexual abuse occurred. HRS

argument that information produced solely in "[r]eliance on Ancier's counsel's assurances certainly qualifies as a compelling reason . . . [to] seal the records," Doc. No. 274, Herman's Opp'n at 5, without more, is not persuasive.

In short, Defendants' mere reliance on the fact that information was previously sealed for discovery purposes falls well short of establishing a compelling reason to seal such information in relation to a dispositive motion.

**C.   Full Names of Alleged Perpetrators Will Be Sealed**

Herman asserts two bases for establishing that compelling reasons exist to seal Exhibit 4: (1) public release of the names of other alleged perpetrators not part of this or the underlying action would promote public scandal; and (2) Herman executed agreements with the alleged perpetrators named in Exhibit 4 to keep their names confidential. Although not specified by Defendants, the court notes that names of other alleged perpetrators also appear in Exhibits 6 and 19, as well as Plaintiff's CSF and MIS.

---

§ 657.1-8(d). The statute further provides that the "certificate of merit shall be filed by the attorney for the plaintiff and shall be sealed and remain confidential." *Id.*

Neither Defendant argues that § 657-1.8(d) requires that the Certificate of Merit remain sealed in *this* case. That is, it is far from clear that § 657-1.8(d) applies to this case where the statute's extended statute of limitation is inapplicable, Egan is a defendant (and not a plaintiff alleging abuse), and no party was required to file a certificate of merit. Thus, the court finds that § 657-1.8(d) does not provide a compelling reason to seal the portions of Exhibit 6 that quote from the Certificate of Merit.

The court agrees that publicly reiterating the names of other alleged perpetrators of sexual abuse -- who are not parties to either the underlying action or this action -- could promote public scandal. Although the court recognizes that names of other alleged perpetrators are already in the public record, *see, e.g.*, Doc. No. 140-2, Gallagher's Ex. A, continued public identification is not necessary to either the prosecution or defense of this action. Accordingly, the court finds that there are compelling reasons to seal the names of other alleged perpetrators. The court directs Plaintiff to redact the full names of such individuals and to use only their initials wherever they appear in Exhibits 4, 6, 19, the CSF, and MIS.

D.    **Request to "Declassify" Documents**

Finally, Plaintiff seeks to "declassify" Exhibits 4, 6, 19-20, 23-25, the CSF, and MIS pursuant to the Protective Order which provides:

> Declassification. If any Party wishes to have any Confidential Document(s) and/or Confidential Information deemed declassified and removed from the scope of this Order, he or it must first seek consent to do so from the Party or Parties who produced the disputed material. If consent is not obtained, the Party seeking declassification may move for an order determining that the disputed material is not Confidential. The Party who designated the disputed material shall have the burden of proving that it was properly designated as Confidential.

Doc. No. 128, Protective Order ¶ 18.

It is not clear what effect the court's rulings above -- which allow Plaintiff to file Exhibits 4, 6, 19-20, 23-25, the CSF, and MIS publicly, with minimal redactions -- will have on the issue of "declassification," and/or whether they render the instant request moot. Thus, the court DENIES Plaintiff's request without prejudice. If Plaintiff wishes to "declassify" these documents, he may file an appropriate motion before Magistrate Judge Richard L. Puglisi, who issued the Protective Order.

## V. CONCLUSION

Based on the foregoing, the Motion is GRANTED in part and DENIED in part. Plaintiff's Exhibits 4, 6, 19-20, 23-25, CSF, and MIS may be filed publicly in support of his Motion for Summary Judgment, provided that the

///

///

///

///

///

///

///

///

names of other alleged perpetrators be redacted and replaced by their initials only.

Plaintiff's request to "declassify" these documents is DENIED without prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 4, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Ancier v. Egan, et al.*, Civ. No. 14-00294 JMS-RLP, Order Granting in Part and Denying in Part Motion to Publicly File Documents in Support of Plaintiff's Motion for Summary Judgment, Doc. No. 264